# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
12/08/2020
CT Log Number 538714156

**TO:** Ana Williams
Intel Corporation
2200 Mission College Blvd, MS RNB-4-151
Santa Clara, CA 95054-1537

**RE:** **Process Served in California**

**FOR:** Intel Corporation  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DANIELLE DYSINGER, ETC., PLTF. vs. INTEL CORPORATION, ETC., ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 20CV371802 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/08/2020 at 12:50 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/08/2020, Expected Purge Date: 12/13/2020 |
| | Image SOP |
| | Email Notification,  Emilynne deVera  EMILYNNE.DE.VERA@INTEL.COM |
| | Email Notification,  Mary Ann Bedolla  maryann.bedolla@intel.com |
| | Email Notification,  Ana Williams  ana.b.williams@intel.com |
| | Email Notification,  Hong Nguyen  hong.nguyen@intel.com |
| | Email Notification,  Keith Elliott  keith.r.elliott@intel.com |
| | Email Notification,  Sophol Sareth  Sophol.sareth@intel.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>818 West 7th Street<br>Los Angeles, CA 90017<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

 **CT Corporation**

**Service of Process Transmittal**
12/08/2020
CT Log Number 538714156

**TO:**   Ana Williams
Intel Corporation
2200 Mission College Blvd, MS RNB-4-151
Santa Clara, CA 95054-1537

**RE:**   **Process Served in California**

**FOR:**   Intel Corporation   (Domestic State: DE)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                     Tue, Dec 8, 2020

**Server Name:**            Gerardo Castaneda

| | |
|---|---|
| Entity Served | INTEL CORPORATION |
| Agent Name | C T CORPORATION SYSTEM |
| Case Number | 20CV371802 |
| Jurisdiction | CA |



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

E-FILED
10/8/2020 5:43 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV371802
Reviewed By: D Harris
Envelope: 5078599

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
INTEL CORPORATION, Delaware corporation, and CONNOR BUTLER, in his individual and professional capacity and DOES 1-10.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DANIELLE DYSINGER

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):*   SANTA CLARA<br>191 North First Street<br>San Jose, 95113 | 20CV371802 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

David P. Myers, The Myers Law Group, A.P.C. 9327 Fairway View Place Ste. 100 Rancho Cucamonga, CA 91730

| DATE:<br>*(Fecha)* | 10/8/2020 5:43 PM | Clerk of Court | Clerk, by<br>*(Secretario)* | D Harris | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*



**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.

2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* INTEL CORPORATION, a Delaware Corporation

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*

4. [ ] by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

20CV371802
Santa Clara – Civil

ATTACHMENT CV-5012 Harris

# CIVIL LAWSUIT NOTICE

20CV371802

**Superior Court of California, County of Santa Clara**     CASE NUMBER _____
**191 North First St., San José, CA 95113**

## PLEASE READ THIS ENTIRE FORM

**FOR SERVICE ON DEFENDANT:**

Intel Corporation

---

**DEFENDANT** (The person sued): **You must do each of the following to protect** your rights:

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   **Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

**RULES AND FORMS:** You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

**CASE MANAGEMENT CONFERENCE (CMC):** You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: _____ Kulkarni, Sunil R _____     Department: _____

The 1st CMC is scheduled for: (Completed by Clerk of Court)

   Date: 02/16/2021 _____ Time: 2:15 pm _____ in Department: _____ 8

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

   Date: _____ Time: _____ in Department: _____

---

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**WARNING:** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>David P. Myers (SBN 206137); Rudy Balderama (SBN 234602)<br>The Myers Law Group, A.P.C.<br>9327 Fairway View Place Ste 100 Rancho Cucamonga, CA | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: 909-919-2027   FAX NO. (Optional): 888-375-2102<br>ATTORNEY FOR (Name): Plaintiff Danielle Dysinger | **Electronically Filed**<br>**by Superior Court of CA,**<br>**County of Santa Clara,**<br>**on 10/8/2020 5:43 PM** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 North First Street<br>MAILING ADDRESS: 191 North First Street<br>CITY AND ZIP CODE: San Jose, 95113<br>BRANCH NAME: Downtown | **Reviewed By: D Harris**<br>**Case #20CV371802**<br>**Envelope: 5078599** |
| CASE NAME:<br>Danielle Dysinger v. Intel Corporation, et al. | |

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 20CV371802 |
| | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): 10
5. This case [ ] is  [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 8, 2020

David P. Myers
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice— Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 (Rev. July 1, 2007)

**CIVIL CASE COVER SHEET**

Page 2 of 2

David P. Myers (SBN 206137)
Rudy Balderama (SBN 234602)
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

E-FILED
10/8/2020 5:43 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV371802
Reviewed By: D Harris

Attorneys for Plaintiff Danielle Dysinger

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN

AND FOR THE COUNTY OF SANTA CLARA

DANIELLE DYSINGER, an individual,

Plaintiff,

vs.

INTEL CORPORATION, Delaware corporation, and CONNOR BUTLER, in his individual and professional capacity and DOES 1-10.

Defendants.

Case No.   20CV371802

(JURY TRIAL DEMANDED)
1. RETALIATION (CAL. GOV. CODE §12940(J)
2. SEX HARASSMENT-HWE (CAL. GOV. CODE §12940(J))
3. SEX HARASSMENT-QUID PRO QUO (CAL. GOV. CODE §12940(J))
4. FAILURE TO PREVENT DISCRIMINATION & HARASSMENT (CAL. GOV. CODE §12940(K))
5. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS (CAL. GOV. CODE§ 12940)
6. DISABILITY DISCRIMINATION (CAL. GOV. CODE §12940)
7. FAILURE TO ACCOMMODATE (CAL. GOV. CODE §12940(M))
8. TRAFFICKING (18 U.S.C. § 1591)
9. SEX HARASSMENT (TITLE VII)
10. RETALIATION (TITLE VII)

*Demand Exceeds $25,000*

1

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**PARTIES**

1.   Plaintiff Danielle Dysinger ("Plaintiff" or "Plaintiff") is a citizen and resident of California.  As alleged in this complaint, Plaintiff was employed by Defendant Intel Corporation at various facilities, including Chandler, Arizona, Hillsboro, Oregon and Santa Clara County, California.

2.   Defendant Intel Corporation (hereinafter referred to as "Intel") is a Delaware corporation with its principal place of business located at 2200 Mission College Boulevard, RNB-5-125, Santa Clara, California 95054.  Defendant Intel maintains and operates manufacturing facilities throughout the United States, including in California, Oregon and Arizona.  Defendant Intel may be served process by serving Defendant Intel's Registered Agent for service of process who is "CT Corporation System" located at 818 W 7th Street, #930, Los Angeles, California 90017.

3.   Defendant Intel is a multinational corporation and technology company with thousands of employees. Founded in 1968, it is the world's second largest and second highest valued semiconductor chip maker based on revenue and is the inventor of the x86 series of microprocessors, the processors found in most PCs. Intel supplies processors for computer system manufacturers such as Apple, Lenovo, HP, and Dell. Its broad range of customers includes OEMs, ODMs, cloud and communications service providers, and industrial, communications, and automotive equipment manufacturers.

4.   Defendant Butler is a citizen and resident of Phoenix, Arizona. He is a former corporate "Innovation Officer" of the Intel Corporation.  Upon information and belief, Defendant Butler separated from the Intel Corporation in November 2017, yet continued to maintain a business relationship with Defendant Intel after his departure.

5.   The true names and capacities of Defendants sued herein as DOES 1 though 10, inclusive, are currently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will request leave to amend this complaint to allege their true names and capacities if and when the same have been ascertained.

6.   The allegations of this Complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

7.   Defendants have purposely availed themselves of the benefits of doing business and engaging in transactions in this forum. The causes of action set forth herein have a substantial connection to the Defendants' activities in this forum.

**2**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURSIDICTION AND VENUE**

8.   Venue properly lies in this county in that the Defendants regularly conduct business in this county and the Plaintiff suffered injuries while employed by Defendant Intel and under the supervision and control of Defendant Butler. This Court has jurisdiction in that this is a claim for damages well more than the jurisdictional minimum of $25,000.

9.   The Court has jurisdiction over this matter pursuant to California Fair Housing and Employment Act, Cal. Gov't Code § 12940, et seq., because it is a case arising under the laws of California.

**ADMINISTRATIVE PREQUISITES**

10. Prior to filing this Complaint, the Plaintiff exhausted her administrative remedies and secured a right to sue letter from both the California Department of Fair Housing and Employment ("DFEH") and the Equal Employment Opportunity Commission ("EEOC").

**CONTINUING VIOLATIONS**

11.  The wrongful acts and omissions giving rise to the Defendants' liability in this action commenced in or about 2014 and have been and are "continuing" in nature as of the date of filing this Complaint. Plaintiff reserves the right to amend this Complaint as new and additional facts and claims arise or become known to Plaintiff.

**TOLLING DUE TO DURESS AND DISABILITY**

12. Plaintiff was incapacitated due to post-traumatic stress disorder caused by Defendant Butler's violent and willful actions, and as a result, was incapable of transacting business or understanding the nature and effect of her actions, and as a result is entitled to equitable tolling of her claim as well at tolling under California Code of Civil Procedure section 352. See, *Stoll v. Runyon,* (1999) 165 F.3d 1238.  Defendant Butler, individually and as a managing agent/officer of Defendant Intel, committed violent sexual assaults on the Plaintiff in the State of California, and such other parts as alleged herein in this Complaint.

13. Further, the wrongful acts of Defendants placed Plaintiff under economic duress. Plaintiff delayed filing suit for the additional reason that she feared for her livelihood and reprisals by Defendants, due in part to being deeply dependent on her job at Intel, which was her sole source income.   Defendant Butler exploited his control over her employment by dissuading the Plaintiff from reporting or otherwise engaging in any oppositional activities.

14. Further, Defendants placed Plaintiff under emotional duress to prevent

**3**

1   her from filing suit or otherwise complaining of their unlawful acts. Plaintiff contends that

2   Defendant Butler exploited his position and influence and used threats to deter her from

    coming forward.  Under California law, threats and undue influence are both grounds for

3   tolling based on estoppel. "It is well settled that where delay in commencing an action is

4   induced by the conduct of the defendant, he cannot-avail himself of the defense of the statute

5   [of limitations]. [Citations.]" (*Gaglione v. Coolidge* (1955) 134 Cal.App.2d 518, 527, 286 P.2d

6   568; see also *Rupley v. Huntsman* (1958) 159 Cal.App.2d 307, 313, 324 P.2d 19; *Langdon v.

7   Langdon* (1941) 47 Cal.App.2d 28, 32, 117 P.2d 371; *IndustrialIndem. Co. v. Ind. Acc. Corn.*

8   (1953) 115 Cal.App.2d 684, 689, 252 P.2d 649; *Carruth v. Fritch* (1950) 36 Cal.2d 426, 434,

    224 P.2d 702.)

9                                  **FACTUAL ALLEGATIONS**

10  **A. Preliminary Statement**

11      15. This case involves a sociopathic and sadistic Intel corporate executive (Defendant

12  Butler) who exerted his power and influence within Intel to create and maintain an unlawful

13  *quid pro quo* sexual arrangement with a female subordinate.  While acting as Defendant Intel's

    recruiter, Defendant Butler was able to lure a young female college student (Plaintiff) into a
14
    becoming his sexual plaything under the guise of working under him as an engineer for
15
    Defendant Intel.  The immense power and authority bestowed by Defendant Intel to Defendant
16
    Butler allowed him to commit sexual abuse and other excesses without any meaningful
17  oversight. Defendant Butler essentially created a position for the Plaintiff so that she would

18  answer to him and no one else. Defendant Butler controlled every aspect of her employment

19  and dominated much of her personal life.

20      16. The Plaintiff remained under the direct supervision and control of Defendant

21  Butler from December 1, 2014, until September 2016.  In just a matter of months, Defendant

    Butler manipulated and coerced the Plaintiff into accepting a *quid pro quo* sexual arrangement.
22
    Defendant Butler lavished the Plaintiff with promises of guaranteed employment, benefits and
23
    promotions while concomitantly resorting to acts of intimidation and sexual violence to quell
24
    any sign resistance. Defendant Butler also made known that he personally derived sexual
25  gratification from sadistic sexual practices.  During the course of her employment, the Plaintiff

26  endured varying degrees of physical and psychological abuse that included, *inter alia*, repeated

    sexual assaults, stalking, manipulation, sexual humiliation and even violent rapes.
27
        17. The Plaintiff has suffered severe emotional distress and physical symptoms as a
28

result of this prolonged harassment, such as nausea, stomach pains, hopelessness, self-harm, easting disorders, isolation, emotional detachment, somatic delusions, panic attacks, headaches, anxiety, loss of sleep, nightmares, depression, hopelessness, embarrassment, humiliation, and loss of self-esteem, among other things.

18. The Plaintiff was able to break away from Defendant Butler when she relocated to a different Intel facility located in Santa Clara, California, and was assigned a new supervisor. Unfortunately, the prolonged and cumulative impact of the sexual abuse and violence endured by the Plaintiff led her to suffer traumatic breakdown that left her unable to function at work and forced her to go on disability leave on March 29, 2018.

19. While on disability leave, the Plaintiff was able to find treatment to address the cause of her trauma and begin the long and slow road to recovery. The Plaintiff's goal was to continue rehabilitation through intensive therapy so that she could safely return to work.

20. On September 9, 2018, and while on disability leave, the Plaintiff reported the entirety of her complaints about her mistreatment to Defendant Intel's HR department. Defendant Intel's investigator met multiple times with the Plaintiff and had even received an extremely detailed written account of the egregious suffering the Plaintiff underwent. On January 23, 2020, Defendant Intel responded by grossly mischaracterizing her reports as amounting to nothing more than mere violations of Defendant Intel's non-fraternization policy — and not violent sexual assault and rape. Plaintiff was left in shock and disbelief that her reporting of sexual abuse was completely futile and sank into a severe and crippling bout of depression. Meanwhile, Defendant Intel succeeded in downplaying and detracting from the severity of the sexual abuse at issue. —

21. In effect, Defendant Intel aided and abetted Defendant Butler's sexual misconduct by dismissing the Plaintiff's report of horrific sexual abuse as nothing more than a trifling breach of its anti-fraternization policy. Defendant Intel's dissembling of the truth behind the sexual assaults and rapes reported by the Plaintiff caused her to be retraumatized. Defendant Intel showed its cards and conveyed the message that it would stand by, support, and protect sexual predators, such as Defendant Butler, no matter how egregious his misconduct. Defendant Intel's behavior in dismissing and rejecting her report also served as a powerful reminder that reporting sexual abuse by high-level corporate executives would fall on deaf ears or, as was the case here, would lead to acts of retaliation against the female victims of sexual harassment.

22. Even worse, a month later, on January 23, 2020, Defendant Intel abruptly informed the Plaintiff that she was being terminated because she had incidentally admitted to having a expressed a suicidal ideation about wanting to end her life. This decision to terminate was blatantly retaliatory, discriminatory and in breach of the Plaintiff's right to be accommodated. Defendant Intel's termination decision even defied the recommendations of its own medical staff, who had confirmed that suicidal ideations were treatable and had recommended that the Plaintiff undergo EMDR therapy, which is a short-term inpatient treatment lasting six weeks.

**B. Background of the Victim and Abuser**

23. Prior to her involvement with Defendant Intel, Plaintiff was raised in a highly conservative sheltered and religious home. Plaintiff worked extremely hard in college and earned a degree in Chemical Engineering at the University of Arizona. Her dream was to become a highly respected professional at an esteemed company such as Intel. At the time of her hiring, the Plaintiff naively believed that Defendant Intel would somehow offer a professional work environment free of sexual predators and harassment. The Plaintiff was completely unprepared to deal with the predatory behavior of Defendant Butler and the lengths that the Intel Corporation would go to coverup and downplay the sexual abuse and eliminate her from workplace.

**C. Plaintiff's initial work assignment to Defendant Intel's facility in Chandler, Arizona**

24. The Plaintiff's first encounter with Defendant Butler occurred in the Spring of 2013 when the Plaintiff attended college job fair. At the time, Defendant Butler was working as a recruiter for Defendant Intel. In his capacity as a recruiter, Defendant Butler was in a prime position to seek out, sexually target and lure young female candidates, such as the Plaintiff. Defendant Butler took a distinct interest in the Plaintiff and conveyed to her that he could make get her a job with Intel if she played her cards right. Defendant Butler informed the Plaintiff that he envisioned her working with him at Intel, and that he would try to use his position and authority to guarantee her hiring in the future. Defendant Butler recommended that the Plaintiff start off working with one of Defendant Intel's contractors, Meissner & Wurst *aka* Exyte ("M+W").

25. In August of 2013, Plaintiff was formally hired by M+W, as a Project

1

2

Engineer—albeit subject to the full direction and control of Defendant Intel and Defendant Butler. In accordance with Defendant Butler's wishes, M+W assigned the Plaintiff to work at a site in Phoenix where Defendant Butler would retain authority over her as her supervisor.

3

4

5

6

26. Although M+W was facing a multitude of layoffs that began early 2014, Defendant Butler continually exercised his authority to allocate funding that would ensure that the Plaintiff would retain her position. Defendant Butler did not take such steps to protect any other employee.

7

8

9

10

11

12

13

27. The Plaintiff expected that her job would entail engaging work with a team of talented fellow engineers. Instead, the Plaintiff found that she, and she alone, would be stationed in the same workspace together with Defendant Butler. The workspace consisted of a trailer located 20 minutes walking distance from the location where the other new hires were assigned to work. There would occasionally be non-engineer construction workers in the vicinity, but there were no similarly situated peers or colleagues in sight. Plaintiff recalls feeling awkward and uncomfortable with being isolated while her peers and colleagues were situated in a separate building located 20 minutes away.

14

15

16

17

18

19

28. Plaintiff recalls Defendant Butler controlled every aspect of how Plaintiff spent her day. Defendant Butler segregated the Plaintiff from her peers and directed Plaintiff to perform tasks that kept her under his personal control. What little work she was assigned often consisted of busywork, such as making observations of construction workers at a local worksite while writing down notes regarding their value added to the company. In all, the Plaintiff performed approximately 30 hours per week of direct observations and other miscellaneous busy work.

20

21

22

23

24

25

26

27

29. She was being slowly worn down by the monotony of her work assignments in conjunction with her removal from her peers. The Plaintiff was completely new and simply put her head down and fulfilled Defendant Butler's commands. Plaintiff increasingly found herself sitting idly by during the workday for the ostensible purpose of keeping Defendant Butler company. To her surprise, no Intel or M+W management personnel ever interfered or even inquired as to why Defendant Butler had sidelined the Plaintiff and segregated her from her peers. Moreover, by this time. the Defendant Butler had not disclosed his sexual interest or intentions towards the Plaintiff. Defendant Butler seemed content to slowly set the conditions that would facilitate his future sexual predations.

30. On April 8, 2014, and despite the lack of work and the ongoing layoffs, the Plaintiff

28

7

secured a promotion at M+W thanks to Defendant Butler's influence and advocacy.

**D. Predatory Behavior During Overseas Work Assignment in Ireland**

31. On or about May 14, 2014, Defendant Butler informed the Plaintiff that there was an opportunity to take an official business trip to Dublin, Ireland. Defendant Butler urged the Plaintiff to travel to Ireland by playing up the importance it would have vis-à-vis her future career prospects with Intel. Using the powerful incentive of potential career advancement within Intel, Defendant Butler was able to persuade the Plaintiff to take the trip. The Plaintiff was made to believe the trip would be just a matter of weeks, with an anticipated return date on June 7, 2014.

32. Plaintiff arrived in Dublin, Ireland on May 24, 2014, the Plaintiff was uncomfortable with the fact that she had been lured into a foreign Country under suspect pretenses. To begin, she was surprised that Defendant Butler had (unbeknownst to her) travelled to Ireland the same day as the Plaintiff. Next, the Plaintiff was surprised that the trip was going to last several months — as opposed to a couple of weeks.

33. The Plaintiff experienced an overwhelming sense of dread due to the isolation and insecurity because she knew no one in Ireland and felt distress over being thousands of miles from home with no family or friends. Plaintiff was additionally concerned by the fact that there appeared to be far less work for her to do in Ireland.

34. For his part, Defendant Butler saw this overseas travel assignment as an ideal opportunity for him to further isolate and enclose the Plaintiff in his personal sphere of influence and control. He now had less eyes to watch what he was doing and would be dealing with a veritable captive audience.

35. The Plaintiff noticed that Defendant Butler had been quick to insert himself into her personal life. Defendant Butler was insistent that the Plaintiff regularly join him for dinner and drinks. These social invitations were soon accompanied by more invitations. On or about May 28, 2014, the Plaintiff recalled joining Defendant Butler for dinner. During her walk to the event, the Plaintiff noticed that Defendant Butler's demeanor had changed and that he began following her and touching her excessively. When Defendant Butler asked the Plaintiff to join him at his hotel for a drink, the Plaintiff declined and went back to her hotel.

36. Defendant Butler began to wear the Plaintiff's will down by continually pressuring her and taunting her about possibly losing her job if she did not agree to join him. Over time, the Defendant Butler's showed his true temperament and began aggressively

pressuring the Plaintiff to accompany him. To get her attention, Defendant Butler would say "I didn't bring you to Ireland for you to blow me off." and "Are you going to be difficult or do I need to shorten your contract." Over time, the constant bullying, and pressure took its toll on the Plaintiff and caused her to yield and give in to his invitations.

37. On or about June 3, 2014, Defendant Butler concocted a story about suddenly needing to change hotels due to purported lack of vacancies and relocated to the same hotel where the Plaintiff had been staying. The Plaintiff verified that there were many vacancies in the area. When Defendant Butler found out that the Plaintiff was sharing a room with another colleague, he insisted that the Plaintiff's roommate vacate and arranged for her to secure her own hotel room which he agreed to cover at the company's expense. Removing the roommate was strategically important for Defendant Butler and foreshadowed his dark intentions.

38. Defendant Butler wasted little before letting known his intentions about the Plaintiff. On or about June 5, 2014, Defendant Butler lured the Plaintiff into his hotel room while he was finishing a conference call. Without warning, Defendant Butler seized the Plaintiff and pressed her body against the bed while he forcibly disrobed her. The Plaintiff went into a severe panic as Defendant Butler used his disproportionate physicality to restrain and assault her sexually. Plaintiff tried to pull away and told him "no" but found herself completely under his control. Defendant Butler started his assault by forcing his mouth on her vagina and performing forcible oral sex on her. The Plaintiff recalls her body involuntarily freezing and experiencing a disassociation from her body as the rape went on. The Plaintiff also recalls running away from the bedroom in tears.

39. The Plaintiff's experience of being savagely raped was so overwhelming that she was unable to mentally process the experience in a coherent way. The Plaintiff experienced negative racing thoughts that consumed her and clouded her judgment. Among the multiplicity of negative emotions, Plaintiff felt an especially overwhelming sense of shame and humiliation over what had happened. These feelings of shame were compounded by equally powerful feelings of fear of possible reprisals from Defendant Butler if she dared to say anything about what happened. After weighing the situation, the Plaintiff convinced herself that Defendant Butler was far too powerful and influential to go against.

40. For his part, Defendant Butler acted as though absolutely nothing had happened. The Plaintiff observed that Defendant Butler's behavior belied the fact that he had raped one of his subordinates. By and through his words, conduct and demeanor, Defendant Butler

9

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  prevailed in convincing her that it would be best for her to play along. In fact, on two separate
2  occasions, Defendant Butler warned Plaintiff that he could easily "defund" her position at
   M&W and, further, take steps to ensure that she would have no job with Intel when she
3  returned from Ireland. At this point, Defendant became increasingly domineering and used his
4  power and leverage to coerce the Plaintiff into silently acquiescing to his sexual demands.
5  Based on the inordinate amount of pressure and the extreme isolation she faced, the Plaintiff
6  recalls feeling like little more than a captive.

7      41. The Plaintiff's mental health seriously deteriorated in the aftermath of the rape. On
   June 6, 2014, the Plaintiff experienced a panic attack while having dinner with an M+W
8  supervisor and Defendant Butler. The Plaintiff was unable to explain the cause of her panic
9  attack to anyone around her. The experience of having been raped broke the Plaintiff's morale
10 to the point that she would blindly accompany Butler on command. The Plaintiff managed to
11 retain her dignity and self-respect only by bottling and repressing the incident. She had no
12 guidance on how to manage her situation and thus chose the path of least resistance.

13     42. On or about June 9, 2014, the Plaintiff went to see a doctor after she continued to
   suffer from severe panic attacks. The Plaintiff was too afraid to speak openly with her doctor
14 over the cause of the panic attacks. On or about June 13, 2014, the Plaintiff attended a
15 company event together with Defendant Butler. During the evening, Plaintiff noticed that
16 Defendant Butler kept moving close to her and touching her excessively. Defendant Butler
17 drank heavily at the event and found an opportunity during the evening to grab Plaintiff and
18 forcefully kiss her on the mouth. She pleaded, "Please don't," and immediately tried to pull
19 away. Defendant Butler responded: "It's okay. My wife won't mind." Defendant Butler
   continued to grope the Plaintiff thereafter causing her to suffer a panic attack and
20 hyperventilate.

21     43. In July 2014, Defendant Butler asked the Plaintiff to join him for dinner. The
22 Plaintiff recalled that she cried hysterically and was unable to eat at the table. Defendant Butler
23 cancelled the dinner and invited her to his room with the pretense he wished to console her and
24 calm her down. During the walk to Butlers hotel room, Plaintiff made an effort to break away
25 and run home. After entering the room, Defendant Butler forcefully grabbed the Plaintiff and
26 pressed her down to rape her. The Plaintiff recalls crying the entire time she was being raped.
27 The Plaintiff also recalls being asphyxiated and unable to breathe when Defendant Butler
   pressed on top of her face with his chest.
28

**10**
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44. Defendant Butler's ostensible strategy was to encourage Plaintiff to pretend that nothing traumatic had happened.   In so doing, the Plaintiff internalized the trauma by bottling it up and dissociating from it. The combination of fear, anxiety and trauma from the repeated sexual abuse left Plaintiff in a vulnerable position that Defendant Butler was able to exploit for his personal ends.  Once he was confident that she would remain silent about the sexual abuse, Defendant Butler was able to present the sexual *quid pro quo* arrangement as a means of re-framing and normalizing their "relationship." Feeling completely trapped, demoralized, and defeated, Plaintiff said nothing. The Plaintiff recalls feeling that she no choice but to yield to her abuser's aggressive overtures.  Over time, the Plaintiff felt more and more like a captive in relation to her abuser. The Stockholm Syndrome best explains the thought process of victims of rape in certain. Whereas Defendant Butler had absolute control over Intel's operations, the Plaintiff held on to her position only by the grace of her abuser.

45. In October 2014, Plaintiff' assignment to Ireland ended, as did her tenure with M+W.  The end of her employment with M+W prompted Defendant Butler to pull the strings necessary for Plaintiff to get a job offer from Defendant Intel.

### E. Continuing Predatory Behavior in Oregon

46. On or about November 11, 2014, Plaintiff received a formal letter of employment from Defendant Intel pursuant to which she was hired by Defendant Intel on a 12-month provisional tryout basis in Defendant Intel's Recent College Graduate ("RCG") program.  Defendant Butler was able to extend this provisional period by six additional months until July of 2016. The Plaintiff's effective hire date with Defendant Intel was December 1, 2015. The Plaintiff's job title at the time of hire was "Project Manager".

47. Plaintiff's initial work assignment with the Intel Corporation was to transfer to their engineering facility in Hillsboro, Oregon.   Despite his being stationed in Phoenix, Arizona, Defendant Butler was able to remain on as her supervisor at Intel.   Defendant Butler used his influence with Defendant Intel to justify his extended trips over to the Hillsboro, Oregon facility.

48. Defendant Butler continued to sexually harass and abuse the Plaintiff.  On November 24, 2014, Defendant Butler visited the Plaintiff while she was moving her belongings out of a storage unit in preparation for her relocation. While helping her move a mattress out of the unit, Defendant Butler tipped the mattress over and gestured that he wanted

1  to have sex.  Despite hearing the Plaintiff object, Defendant Butler closed the door to the
   storage unit and violently forced himself on her.

2
3  49. Although Plaintiff's transfer to Oregon would seemingly allow her some space from
   Defendant Butler, the Plaintiff worried that there would be future incidents.  The Plaintiff
4  confronted Defendant Butler and begged and demanded that he promise to cease and desist all
5  sexual contact.

6  50. Defendant Butler had no intention of not pressing his sexual demands on
   the Plaintiff.  Though he was a married man, Defendant Butler was able to get away from his
7  wife without having to explain his absences other than being work related.
8
9  51. Defendant Butler created the false façade that he had important business to attend to
   in Oregon which allowed him to keep close to the Plaintiff.  Other personnel at the Oregon
10 facility knew full well that Defendant Butler had no business in Oregon.  Defendant Butler
11 created new project or simply abruptly inserted himself into some preexisting projects.  While
12 under his continued direction and control, Plaintiff found herself performing the usual
13 monotony of errands, note-taking and keeping herself occupied with other mindless busy work
   while being isolated from her peers.  Plaintiff recalled that these projects seemed to get more
14 and more nonsensical.  At no point was she ever given a deadline.   It was clear that Defendant
15 Butler was misusing company funds to cover the Plaintiff's expenses without any value being
16 added to the company.  At any time, any other supervisor tried to give her a work assignment,
17 Defendant Butler would interject and demand that the Plaintiff be released to focus on his
18 assignments.

19 52. Much of the Plaintiff "work" simply involved her sitting idly by in an Intel
20 conference room while Defendant Butler worked.  The Plaintiff felt a deep humiliation from
   the fear that others would mock her or dismiss her as some kind of mistress.
21
22 53. Outside of work, Defendant Butler demanded that she cancel her plans to share an
   apartment with roommates.  Defendant Butler demanded that Plaintiff find an apartment where
23 she would live alone and be available to him.

24 54. Despite having relocated to Oregon, Plaintiff felt trapped in the same
25 subservient *quid pro quo* sexual relationship with Defendant Butler.   Plaintiff's pleas to end
   their sexual liaisons angered Defendant Butler and were a common source of strife.  Defendant
26 Butler responded to Plaintiff's complaints about her unhappiness by mocking and ridiculing
27 her.  Defendant Butler would belittle her and tell her that she was living out her own "Danielle
28

**12**

1  Steele" romance novel.  Defendant Butler reminded her that she should be grateful to him for

2  the employment benefits that she had enjoyed, including the opportunity to travel on business,

   staying in luxury hotels, meals at expensive restaurants and the promise of rising in the

3  company.  Defendant Intel financially aided and abetted Defendant Butler's plot to keep the

4  Plaintiff as his veritably caged concubine.

5          55. On several occasions, the Plaintiff tried to seek help from therapists or counselors

6  only to have Defendant Butler intercede and demand that the Plaintiff cancel.   Defendant

7  Butler somehow manipulated the Plaintiff into feeling concern for his safety.

8          56. On or about March 2, 2015, the Plaintiff recalled having an argument with Mr.

   Butler that led to her being manhandled and raped.  At the time, Defendant Butler had accused

9  the Plaintiff of engaging in sex with another man and struck her.  The Plaintiff attempted to

10  escape Defendant Butler's grasp by locking herself in the closet and screaming for help.  No

11  one came for help.  As she tried to escape, Defendant Butler blocked the door to the exit and

12  was able to press the Plaintiff onto the ground by twisting her arm.  Defendant Butler

13  repeatedly struck the Plaintiff as she tried to resist.  While violently pressing her face-down on

   the ground, Defendant Butler forcibly raped the Plaintiff.

14          57. The cumulative effect of the sexual and physical abuse caused the Plaintiff's mental

15  health to deteriorate. Plaintiff found it easier to get through the process by compartmentalizing

16  her abuse and disassociating herself as much as possible from the experience.  Beginning on

17  March 11, 2015, the Plaintiff began experiencing somatic delusions and troubling

18  hallucinations about things did not exist.   She recalled going to specialists to seek treatment for

19  non-existent maladies, such as warts on her skin that did not exist.  In brief, the Plaintiff was

20  breaking down and losing her grip on reality.

21          58. On March 24, 2015, Defendant Butler took the Plaintiff along with him to a

   business trip to Anaheim, California.  While she was in his hotel room, Defendant Butler stated

22  that he had a surprise for her, but that she would have to cover her eyes with a blindfold.

23  Defendant Butler forcefully twisted the Plaintiff's arms behind her back and held her down

24  while he tied her down and gagged her with. Once he had her fully under control, Defendant

25  Butler brutally raped the Plaintiff while holding his throat and slapping her and pulling her

26  hair.  The Plaintiff experienced excruciating pain and cried while she was being brutalized.

   After finishing, Defendant Butler left her tied down the entire night in his hotel room.  When

27  Defendant Butler reappeared the next morning, Defendant Butler removed the gag and pressed

28

---

**13**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

her mouth onto his blood covered penis.  The Plaintiff continued to scream and begged to be untied.  After the incident, Defendant Butler told the Plaintiff that he simply did not know she did not like being tied down and raped.  Defendant Butler stated that he enjoyed the brutality and thought she would also.

59. For his part, the Plaintiff did not enjoy the brutality.  The "Anaheim" incident left the Plaintiff terrified, bruised and battered.  The Plaintiff was visibly injured with bruising on her arm and wrists from the pressure of restraints and cut on her head from hitting the wall during a scuffle.

60. On April 13, 2015, Defendant Butler visited the Plaintiff in her apartment in Oregon.  Mr. Butler accused the Plaintiff of sleeping with other men.  Defendant Butler also called her a "slut" and a "bitch" and forced her onto her kitchen table and raped her.  When the Plaintiff begged that he stop, Defendant Butler responded by becoming for forceful and violent.  While he had her bent over, Defendant Butler claimed that he was "doing too much" for the Plaintiff and that he should not.

61. On July 8, 2015, the Plaintiff sought assistance from a therapist for her deteriorating mental health condition.  Defendant Butler objected and immediately demanded she discontinue all treatment.  In addition, Defendant Butler instructed the Plaintiff to cancel any and all appointments she had made to meet with Intel's EAP representatives.  Plaintiff was fearful of the repercussions of her losing her job and possible acts of violence.

62. On August 5, 2015, Defendant Butler pleaded with the Plaintiff to come and visit him.  The Plaintiff agreed on the condition that Defendant Butler promise not to expect anything sexual.  Defendant Butler responded that he was just hoping to watch a movie.  During the movie, Defendant Butler removed his pants and began masturbating in front of her.  Defendant Butler then grabbed the Plaintiff's hand and forced it onto his penis.  The Plaintiff pleaded that he stop but was unable to stop him.

63. On September 2, 2015, the Plaintiff was visited by Defendant Butler.  The Plaintiff told Defendant Butler that she did not want to see him anymore.  Defendant Butler refused to leave.  The Plaintiff then threatened to call the police if he did not leave her apartment.  In response to her threat, Defendant Butler told the Plaintiff that she would be ruining her career and her brother's career  opportunities (who happened to have received an offer letter that Defendant Butler threatened to retract) if she contacted the police.  When the Plaintiff asked

**14**
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   again if he would leave, Defendant Butler responded by unzipping his pants and pressed her
    body over her couch and proceeded to rape her.

2       64. In November 2015, the Plaintiff had flown to Scottsdale, Arizona to attend a special
3   Intel corporate event known as the Employee Development Program ("EDP"). Prior to the
4   event, the Plaintiff and a team of colleagues worked together to present a joint project that they
5   had been working on. Defendant Butler had previously nominated the Plaintiff without her
6   knowing. Knowing she would be alone and close to his home in Chandler, Arizona, Defendant
7   Butler asked the Plaintiff if he could visit her hotel room in Scottsdale for the days she would
    be staying. The Plaintiff informed Defendant Butler that she did not want him to visit her.
8
        65. When the Plaintiff returned to Oregon in November 2015, Defendant Butler had
9   visited the Plaintiff's home to scream at the Plaintiff and accuse her of having sex with other
10  men during her stay in Scottsdale. The Plaintiff felt that she was in danger and ran into the
11  closet and threatened to call the police. After waiting some time, the Plaintiff exited the closet
12  and checked to make sure he had left. Defendant Butler surprised her and gave chase until he
13  was able to pin her down on the stairs. The Plaintiff continued to scream for help as he forced
    himself inside of her while gripping her neck.
14
        **F. Travel Assignment to Israel**
15
        66. From February 2016 through September 2016, Defendant Butler traveled to Israel
16  together with Plaintiff as part of an extended work assignment. Plaintiff was still Project
17  Manager but performed none of the functions of her job classification. In fact, the Plaintiff was
18  not given any meaningful work assignments. Rather, Defendant Butler demanded that she do
19  little more than keep herself busy during the day inside their hotel room while he went out to
    work and attend to his sexual needs in the evenings. To remind Plaintiff of the subservient
20  sexual role she was expected to fulfill, Defendant Butler made a point of reminding her that he
21  had "brought sand to the beach," in reference to the many other attractive women he saw.

22      67. In February 2016, the Plaintiff received a positive performance evaluation and was
23  given a 5-10% pay increase.

24      68. In the Spring or Summer of 2016, the Plaintiff told Defendant Butler that she did
25  not want to continue any form of sexual relations with him. Despite being in public, Defendant
26  Butler responded by pulling down his pants and reaching inside of her pants. The Plaintiff's
    pleas for help caused a crowd to form and led to the authorities being contacted. The Plaintiff
27

28

1   ran away during the commotion and returned to the hotel. The following day, Defendant Butler

    informed the Plaintiff that he had been detained by the police and later released.

2        69. Upon the conclusion of her work assignment in Israel, on September 22,

3   2016, the Plaintiff returned home to Santa Clara, California.

4        70. In September-October 2016, the Defendant Butler texted/messaged the Plaintiff

5   incessantly with lewd sexual photos, asking that the Plaintiff travel with him. The Plaintiff

6   rejected and refused any contact. At the time, Defendant Butler was no longer her supervisor

7   and lacked the power he once held to dominate the Plaintiff's life. In response Defendant

8   Butler threatened to release videos and pictures he had taken of the Plaintiff showing her nude.

    **G. Transfer to Santa Clara**

9        71. Sometime around September and October 2016, Plaintiff made a request to

10  Defendant Intel's human resources department asking that she be transferred to the "facilities"

11  side of Intel's engineering division in Santa Clara, California. The transfer to Santa Clara

12  represented the first break Plaintiff had from Defendant Butler's authority and control. Up

13  until this time, Defendant Butler had no knowledge of the transfer request and was taken

14  entirely by surprise. Being that he had few connections with the facilities side of Defendant

    Intel's Santa Clara facility, he was unable to exert control over her.

15       72. By October 2016, the Plaintiff was granted permission to work under a new

16  supervisor at Intel's Santa Clara facility on a conditional business travel basis. The Plaintiff

17  worked on a business travel basis in the Santa Clara facility until May 2017, when she was

18  formally transferred to Intel's Santa Clara facility on a permanent basis.

19       73. In February 2017, the Plaintiff received a positive performance review and a

20  commensurate 2.5%.

21       74. The Plaintiff is informed and believes that Defendant Butler ended his employment

    with Defendant Intel sometime in November 2017. Plaintiff is informed and believes that

22  Defendant Intel retained Defendant Butler and/or his business for contract services.

23       75. Despite being assigned to Intel's Santa Clara facility, and temporarily creating

24  space from the abuser, the Plaintiff continued to experience manifestations of trauma that were

25  now compounded by the stresses related to the new work assignments.

26       76. On March 29, 2018, the Plaintiff suffered a severe breakdown that required her to

    become hospitalized until April 10, 2018. In April of 2018, Plaintiff entered treatment for her

27  breakdown and requested time off. During the time she was on disability leave, Plaintiff

28

1  continued to suffer from severe manifestations of delusion, paranoia, suicidal ideation,

2  impaired and abnormal thinking, each of which required treatment and daily supervision from

   family and friends.  Plaintiff's conditions, including her worsening somatic delusions, which

3  led to her to go to residential treatment in Monte Nido treatment facility from September 11,

4  2018, to January 1, 2019.  Plaintiff sought inpatient psychiatric treatment and, through months

5  of extensive therapy, was able to identify that the root causes of her breakdown as stemming

6  from the years of abuse she had suffered at the hands of Defendant Butler.

7          77. Beginning on April 18, 2019, Plaintiff requested a series of alternative

   accommodations that she believed would permit her return to work, including, but not limited

8  to, an extension of additional time for her to recover from her traumatic medical condition and

9  additional measures, such as a service animal, additional flexibility, and changes to her work

10 environment.  Defendant Intel's HR representative ignored these proposals.  The Plaintiff

11 attempted to raise these alternative accommodation proposals a second time thereafter, to

12 which the Defendant Intel's HR representative flatly rejected them on the grounds that they

13 were "outdated".  HR failed to consider these options in the first place and, thus, breached the

   duty to engage in the interactive process.

14
          78. On April 26, 2019, Defendant Intel approved the request for additional leave time

15 after receiving a certification from her health care provider.

16          79. On or about September 16, 2019, and while she was on disability leave, the

17 Plaintiff, with the assistance of her counsel, filed a formal complaint over the sexual abuse she

18 suffered at the hands of Defendant Butler.  The Plaintiff participated in two interviews with

19 Defendant Intel's investigator, Jennifer Nakata.

20          80. On September 26, 2019, the Plaintiff met with Ms. Nakata to provide a factual

21 narrative supporting her complaint.  In this meeting, the Plaintiff described her experience

   being forcibly raped by Defendant Butler.  The Plaintiff described how Defendant Butler used

22 threats to her employment as a means of leveraging and exploiting her vulnerabilities and fears.

23 The Plaintiff also explained how the psychological toll of her experience caused her to

24 breakdown even after her separation from Defendant Butler with her move to Santa Clara,

25 California.

26          81. On October 18, 2019, the Plaintiff met with the investigator Ms. Nakata to follow

27 up on the details of how Defendant Butler became progressively more violent and threatening

   as time went on.  The Plaintiff described how she had been physically attacked with a chair

28

                                                17

and tied down and viciously raped. The Plaintiff also described her state of mind as being a prisoner with no way of out of the situation.   The Plaintiff noted that she had no experience or training that could have helped her deal with a supervisor assaulting her, threatening her and demanding that she better not contact EAP.   The Plaintiff added that there was no effective training that could have prepared her to deal with a violent sexual predator such as Defendant Butler.  Finally, the Plaintiff emphasized that she did not consent to the sadistic rapes that she had endured.    Rather, she was coerced through fear of losing her job and other consequences.

82. In December 2019, the Intel workplace investigator assigned to the Plaintiff's complaint informed "that the investigation identified evidence that inappropriate behavior and violations of company policy took place, specifically in violation of Intel's so-called Non-Fraternization Guideline." There was no mention by Defendant Intel confirming that Defendant Butler had engaged in any form of "sexual harassment."

83. On January 6, 2020, the Plaintiff met and conferred with Defendant Intel's designated physician regarding the ongoing accommodation issues.  During this meeting, the Plaintiff mentioned that she had had a suicidal ideation sometime around November 2019.  In response, Intel's doctor Dr. Stock, stated that suicidal ideations are treatable and that EMDR treatment had been proven to be effective.

84. On January 21, 2020, Defendant Intel's HR representative, Angela Benavidez, notified the Plaintiff that she would be terminated, effective February 2, 2020.  Ms. Benavidez informed Plaintiff that this decision was final and that no further opportunity would be granted for her to return to work.  Ms. Benavidez explained her decision to deny further accommodations on the grounds that 22 months had elapsed, and that the Plaintiff had admitted to having suicidal ideations.  In short, the termination was issued unliterally as a *fait accompli* by Ms. Benavidez, leaving the Plaintiff with no opportunity to consider any alternatives.

85. At the time of the termination, the Plaintiff was ready willing and able to undergo EMDR treatment to address her suicidal ideations, which incidentally, had been triggered by the emotional trauma of going through interviews with Defendant Intel's legal investigator concerning her history of sexual assaults and rapes perpetrated by Defendant Butler.  As noted, Defendant Intel's own medical expert agreed that EMDR treatment would have been effective to address the issue.  Plaintiff's doctor, Dr. Agnieszka Kalinowski disagreed vehemently with the decision not to engage in further interactive discussions.  Dr. Dr. Kalinowski's position was that she had been working with Plaintiff for over a year and believed that the Plaintiff was

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  ready to return to work with, at most, a very brief six-week EMDR treatment.  Ultimately, the

2  Plaintiff did go through with the six-week treatment and successfully addressed the suicidal

3  ideation. Since her termination, the Plaintiff has done six weeks of EMDR treatment and, as a

4  result, experienced no such suicidal ideations and has been ready, able, and willing to return to
work.

5                        **FIRST CAUSE OF ACTION**

6                **(Retaliation - Violation of Cal. Gov't Code §12940(j))**

7                        **(Against Defendant Intel)**

8          86. Plaintiff incorporates by reference the foregoing paragraphs above as though fully
stated herein.

9          87. Government Code Section 12940(h), makes it unlawful for "any person" to retaliate

10  against an employee who has opposed a discriminatory practice, including sexual harassment.

11         88. Plaintiff engaged in a protected activity by submitting her verbal and written

12  complaint detailing the extent of the sexual violence and abuse she endured at the hands of

13  Defendant.

          89. As a result of said activity, Plaintiff suffered the adverse employment action by
14
being terminated a little over a month after submitting her verbal and written complaint about
15
the abuse she suffered.

16         90. There is a causal link between Plaintiff's protected reporting of sexual harassment

17  and abuse and the adverse employment action in that the termination was issued in an abrupt

18  manner that indicated a single-minded intent to punish and eliminate the Plaintiff without

19  regard to possible accommodations and treatment.

20         91. Defendants' termination as alleged above constituted unlawful retaliation in

21  employment on account of the timing of Plaintiff's reporting of sexual harassment in violation

22  of California Government Code §12940(h) and the circumstances surrounding the
accommodation process being undermined.

23         92. Plaintiff filed a timely charge of discrimination with the DFEH naming each of the

24  above-named Defendants as respondents and/or in the body of the charge. Plaintiff has

25  received notice of her right to sue in the California Superior Court pursuant to California

26  Government Code Section 12965(b). Plaintiff filed this action within one year of the date of the

27  "right to sue" letter received from the DFEH and has properly and timely exhausted her
administrative remedies.

28

93. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code §§ 3287 and/or §3288 and/or any other provision of law providing for prejudgment interest.

94. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, severe depression, embarrassment, humiliation, mental anguish, physical injury, and emotional distress. Plaintiff suffers from insomnia, headaches, emotional detachment, and frequent bouts of crying. Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendants, and each of them. Plaintiff is informed and believes and thereon alleges that she will continue to experience said pain and physical and emotional suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

95. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code §12965(b).

96. The acts taken toward Plaintiff were carried out by Defendant Intel's managerial Employee, Defendant Butler, acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner to injure and damage Plaintiff. Defendant Intel had advance knowledge of the unfitness of Defendant Butler and employed him with a conscious disregard for the rights or safety of others. Defendant Intel further authorized and/or ratified the wrongful conduct of Defendant Butler and others, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## SECOND CAUSE OF ACTION
### (Sex Harassment, Hostile Work Environment- Violation of Cal. Gov't Code §12940(j))
### (Against All Defendants)

97. Plaintiff restates and incorporates by reference each and every one of the above

**20**

allegations as though they were fully set forth herein.

98. In perpetrating the above-described action, Defendants engaged in a pattern and practice of unlawful sexual harassment in violation of FEHA, Government Code §§ 12900 et seq.

99. The FEHA codified in Government Code § 12940 makes it unlawful for an employer to sexually harass an employee. Defendant Butler, a supervisor, sexually harassed Plaintiff. The harassment was sufficiently pervasive and severe as to alter conditions of employment and to create a hostile or abusive work environment, in violation of California Government Code §12940(j).

100. The above-referenced conduct by Defendant Butler was unwelcome and offensive.

101. Plaintiff is informed and believes, and thereon alleges, that Defendant Butler's harassing conduct was based on Plaintiff's sex.

102. The conduct of Defendant Butler as described herein was malicious and oppressive, and done with willful intent to cause the Plaintiff severe emotional distress and physical distress, justifying an award of exemplary and punitive damages against the Defendant Intel.

103. As a further proximate result of the unlawful conduct of Defendant Butler against the Plaintiff, as discussed above, Plaintiff has been harmed and has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body. As a result of such unlawful conduct and consequent harm, Plaintiff has suffered damages recoverable against Defendant Intel in an amount according to which will be proven at the time of trial.

104. As a proximate result of the above-alleged wrongful acts, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under statute from the Defendant Intel.

105. Plaintiff alleges that Defendant Butler was a supervisor of Defendant Intel acting in the course and scope of his employment. Defendant Intel is therefore liable for the above-alleged unlawful conduct of Defendant Butler against the Plaintiff.

## THIRD CAUSE OF ACTION

### (Sex Harassment, Quid Pro Quo - Violation of Cal. Gov't Code §12940(j)

**(Against All Defendants)**

106. Plaintiff restates and incorporates by reference each and every one of the above allegations as though they were fully set forth herein.

107. Defendant Butler engaged in *quid pro quo* harassment. The conduct of Defendant Butler, as described hereinabove, constitutes quid pro quo sexual harassment, in violation of the FEHA, at California Government Code Section 12940(j). Plaintiff's *quid pro quo* sexual harassment claim is predicated on, among other conduct, the conditioning of her continued employment on her willingness to participate in sexual acts with Defendant Butler and/or tolerate his sexual advances and hostile work environment.

108. The above-referenced conduct by Defendant Butler was unwelcome and offensive.

109. Plaintiff is informed and believes, and thereon alleges, that Defendant Butler's harassing conduct was based on Plaintiff's sex.

110. The conduct of Defendants as described herein was malicious and oppressive and done with willful intent to cause the Plaintiff severe emotional distress and physical distress, justifying an award of exemplary and punitive damages against the Defendant Intel.

111. As a further proximate result of the unlawful conduct of Defendant Butler against the Plaintiff, as discussed above, Plaintiff has been harmed and has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body. As a result of such unlawful conduct and consequent harm, Plaintiff has suffered damages recoverable against Defendant Intel in an amount according to which will be proven at the time of trial.

112. As a proximate result of the above-alleged wrongful acts, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under statute from the Defendant Intel.

113. Plaintiff alleges that Defendant Butler was a supervisor of Defendant Intel acting in the course and scope of his employment. Defendant Intel is therefore liable for the above-alleged unlawful conduct of Defendant Butler against the Plaintiff.

///

///

**22**

**FOURTH CAUSE OF ACTION**

**(Failure to Prevent Discrimination & Harassment-Violation of Cal. Gov't Code §**

**12940(k))**

**(Plaintiff against all Defendants)**

114. Plaintiff restates and incorporates by reference each and every one of the above allegations as though they were fully set forth herein.

115. Defendant Intel was provided a written and verbal accounting of the extent of harassment suffered by the Plaintiff. On September 19, 2019, the Plaintiff's retained counsel provided the Defendant Intel's HR with a detailed written narrative concerning the sexual abuse and violence endured by Plaintiff at the hands of Defendant Butler. The Plaintiff also met with Defendant Intel's investigator to provide additional facts and details concerning the sexual abuse.

116. Rather than acknowledge the severity of the issue, Defendant Intel minimized and mischaracterized the matter as merely a breach of its non-fraternization policy—as opposed to acknowledging that it constituted sexual harassment and sexual violence in violation of its company rules and regulations. In so doing, Defendant Intel furthered the coverup of sexual violence perpetrated by Defendant Butler. To date, Defendant Intel has not addressed the defect in its investigator's findings. To compound the issue, the Defendant Intel terminated the Plaintiff shortly after she produced the narrative regarding the sexual violence she had been subjected to. By terminating the Plaintiff in response to her report, Defendant Intel demonstrated its animus and institutional apathy towards the Plaintiff's protected activity.

117. To Plaintiff's knowledge, no meaningful or adequate disciplinary action was taken to prevent harassment, discrimination, or retaliation against Plaintiff.

118. In violation of Cal. Gov. Code§ 12940(k), Defendants and each of them, and/or their agents/employees, failed to take all reasonable steps necessary to prevent and investigate unlawful harassment or discrimination or retaliation from occurring, and to remedy such harassment, discrimination, or retaliation. As a proximate result of the wrongful conduct of Defendants, and each of them. Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

119. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

---

**23**

120.    The actions of Defendants in failing to prevent harassment, discrimination, and/or retaliation against Plaintiff were carried out with malice, willfulness and/or reckless indifference to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive. As such, Plaintiff is entitled to punitive damages for the purpose of deterring such unlawful, malicious, oppressive and/or reckless conduct.

121.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

**(Failure to Engage in the Interactive Process -Violation of Cal. Gov't Code § 12940)**

**(Plaintiff against all Defendants)**

122.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

123.    Government Code §12940(n) provides that it is unlawful for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any.

124.    During her employment, Plaintiff engaged in the following, but not limited to, legally protected activities: notifying employer that she had been sexually assaulted and raped by her former supervisor, Defendant Butler, and requesting time off for the purpose of treating her severe depression and PTSD, as well as symptoms of these conditions, including suicidal ideations.

125.    For its part, Defendant Intel violated its duty to engage in the good faith interactive process by summarily terminating the Plaintiff shortly after she reported the abuse, she had suffered at the hands of Defendant Butler.  Defendant Intel broke with past practice by immediately ceasing and withdrawing any dialogue about treatments that would have a great likelihood of helping the Plaintiff in her recovery and return.  In particular, the EMDR therapy would have been an effective treatment that could be completed with a few weeks of inpatient therapy.  Defendant Intel violated its duty to engage in the good-faith interactive process by refusing to consider the alternative accommodation proposals from and/or proposing any alternative accommodations before determining that the parties were at an impasse.

126.    As a proximate result of the wrongful conduct of Defendants, and each of them,

24

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Plaintiff has suffered and continues to sustain substantial losses in earnings and other
employment benefits in an amount according to proof at the time of trial.

2      127.    As a proximate result of the wrongful conduct of Defendants, and each of them,
3  Plaintiff has suffered humiliation, a worsened physical condition, emotional distress, and
4  mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

5      128.    In doing the acts herein alleged, Defendants, and each of them, acted with
6  oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is
7  therefore entitled to punitive damages in an amount according to proof at the time of trial.

8      129.    Plaintiff has also incurred and continues to incur attorneys' fees and legal
expenses in an amount according to proof at the time of trial.  Plaintiff also prays for
9  reasonable costs and attorney's fees against said Defendants, as allowed by Government Code
10  § 12965 and any other applicable statutes for Plaintiff's prosecution of this action.

11

12                    **SIXTH CAUSE OF ACTION**
13  **(Discrimination on the basis of Actual and/or Perceived Disability/Medical Condition –**
**Violation of Gov. Code §12940)**
14              **(Plaintiff against All Defendants)**

15      130.    Plaintiff restates and incorporates by reference each and every allegation
16  contained in the foregoing paragraphs as though fully set forth herein.

17      131.    The FEHA in Government Code § 12940 makes it unlawful for an employer to
18  discriminate against an employee on the basis of the employee's disability/medical condition
19  and/or perceived disability/medical condition.

20      132.    That Defendant Intel is an "employer" within the meaning of California
Government Code, § 12926.

21      133.    At all times herein mentioned, Plaintiff was qualified to perform her position as
22  Senior Recruiter.

23      134.    Defendants engaged in unlawful employment practices in violation of the FEHA
24  by, among other things, terminating Plaintiff on the basis of her disability, perceived disability
25  and/or medical condition.

26      135.    Under the Government Code §12940 it is illegal to discriminate against an

27

28

employee with a physical disability or medical condition.   Plaintiff had a disability and a serious medical condition of severe depression, post-traumatic stress, somatic delusions and suicidal ideations.

136.   Government Code § 12926(i), provides that a mental disability includes having (or being regarded as having) any emotional or mental illness that limits a major life activity.  Here, the Plaintiff had disclosed to the Defendant's HR and doctor a variety of mental conditions that constituted mental illnesses/conditions.  The Plaintiff's suicidal ideations are symptoms and manifestations of PTSD and severe depression, both of which are treatable mental/medical conditions.  For the Defendant Intel to proclaim that no accommodation would have been feasible was erroneous when short-term EMDR treatment could have effectively treated the problem of suicidal ideations.

137.   This cause of action is also based upon Government Code §12940 (n) for discriminating against Plaintiff based on disability and medical condition by failing to reasonably accommodate Plaintiff.

138.   By refusing to allow the Plaintiff to undergo treatment before discharge, Defendant Intel unlawfully discriminated against the Plaintiff.  Plaintiff is informed and believes and thereon alleges that her diagnosis of severe depression and PTSD were motivating factors in Defendant Intel's decision to terminate Plaintiff.  Plaintiff alleges that, if she had not been diagnosed with PTSD and severe depression, and if she had not needed special accommodations of disability leave to seek treatment for her suicidal ideations, she would not have been terminated.

139.   Despite Defendant Intel's decision to summarily terminate the Plaintiff, the Plaintiff continued with six weeks of inpatient EMDR treatment and successfully treated her suicidal ideations.

140.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

141.   As a proximate result of the wrongful conduct of Defendants and each of them, Plaintiff has suffered humiliation, a worsened physical condition, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

142.   In doing the acts herein alleged, Defendants, and each of them, acted with

1   oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is
    therefore entitled to punitive damages in an amount according to proof at the time of trial.

2       143.    Plaintiff has also incurred and continues to incur attorneys' fees and legal
3   expenses in an amount according to proof at the time of trial. Plaintiff also prays for
4   reasonable costs and attorney's fees against said Defendants, as allowed by California
5   Government Code § 12965 and any other applicable statutes for Plaintiff's prosecution of this
6   action. Plaintiff has also incurred and continues to incur attorneys' fees and legal
7   expenses in an amount according to proof at the time of trial. Plaintiff also prays for
    reasonable costs and attorney's fees against said Defendants, as allowed by law.
8

9                        **SEVENTH CAUSE OF ACTION**

10  **(Failure to Reasonably Accommodate Disability/Medical Condition -- Govt. Code**
11                                  **§12940(m)**
12                          **(Plaintiff against all Defendants)**

13      144.    Plaintiff restates and incorporates by reference each and every allegation
    contained in the foregoing paragraphs as though fully set forth herein.
14
        145.    Government Code § 12940(m) provides that it is unlawful for an employer to fail
15  to make a reasonable accommodation for the known physical disability of an employee.

16      146.    Defendant Intel failed to make a reasonable accommodation for Plaintiff's
17  known serious medical condition of PTSD and severe depression by depriving her of the
18  opportunity to undergo six weeks of EMDR treatment as recommended by Intel's physician.
19  At the time, the Defendant Intel's HR complained that the Plaintiff had expressed suicidal
    ideations in November 2018, and that additional leave had not been effective in getting rid of
20  them. In making this determination, Defendant Intel blatantly ignored the option of allowing
21  the Plaintiff to seek EMDR treatment for her mental illness that should have been treated. For
22  the Defendants to presume that granting more leave would have been useless reflects, at best, a
23  short-sighted and willful ignorance. At the time, even Defendant Intel's doctor had approved of
24  a six-week period of inpatient EMDR treatment.

25      147.    As a proximate result of the wrongful conduct of Defendants, and each of them,
    Plaintiff has suffered and continues to sustain substantial losses in earnings and other
26  employment benefits in an amount according to proof at the time of trial.
27
        148.    As a proximate result of the wrongful conduct of Defendants, and each of them,
28

Plaintiff has suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

149.    In doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to punitive damages in an amount according to proof at the time of trial.

150.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.  Plaintiff also prays for reasonable costs and attorney's fees against said Defendants, as allowed by California Government Code § 12965 and any other applicable statutes for Plaintiff's prosecution of this action.

## EIGHTH CAUSE

### (Sex Trafficking under Violation of 18 U.S.C. § 1591, et. Seq.)
### (Plaintiff Against All Defendants)

151.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully within.

152.    Defendant Butler, as he had done on many occasions, engaged in interstate travel for Defendant Intel's business when he perpetrated numerous acts of sexual harassment, rape and abuse against the Plaintiff.

153.    Defendant Intel empowered Defendant Butler to act as its recruiter as means of targeting vulnerable young female hires, such as Plaintiff.

154.    At all relevant times, Defendant Butler understood his ability to protect and advance the Plaintiff's employment with Defendant Intel was of significant commercial value to Plaintiff, and Defendant Butler used promises of career advancement with Defendant Intel to coerce her into performing sexual acts for him.

155.    Defendant Butler used the promise of employment and career advancement at Defendant Intel as a means of enticing the Plaintiff to join him on business trips and overseas work assignments.  Defendant Butler characterized overseas work assignments as valuable opportunities to rise within Defendant Intel's corporate structure.

156.    Defendant Butler knew that the promise of future career advancement with Intel or the use of his influence and authority on her behalf would entice Plaintiff into falling under his influence and knew that he was in a position to coerce the sexual activity he desired.

157.    Defendant Butler knew that he could use threats, physical force and sexual

**28**

abuse against the Plaintiff in order to coerce her into unwanted sexual activity.

158.    Defendant Butler knew that Defendant Intel's institutional apathy and animus towards sexual abuse victims would greatly facilitate and advance his objective to sexually abuse and exploit the Plaintiff.

159.    Defendant Butler was also confident that Defendant Intel would materially aid and assist him in his endeavor to recruit, groom and sexually assault the Plaintiff by providing funding for travel and hotel expenses and by ensuring that there would be minimal, if any, oversight over his activities.

160.    Defendant Butler and Defendant Intel formed a venture as defined by 18 U.S.C. § 1591 given that they constituted a "group of two or more individuals associated in fact, whether or not a legal entity."

161.    Defendant Butler benefited from participation in the venture because Defendant Intel received value from Defendant Butler's services and benefited financially from his continued employment.

162.    Defendant Intel knew, or was in reckless disregard of the facts, that Defendant Butler engaged in a pattern and practice of sexual misconduct with women prior to the time that he raped the Plaintiff.

163.    Defendant Intel knew, or was in reckless disregard of the facts, that it was the practice of Defendant Butler to travel in interstate commerce or use the means of interstate commerce to entice or recruit the Plaintiff into forced or coerced sexual acts based on the promise of future career opportunities or the use of his influence in her favor.

164.    On several occasions, Defendant Butler was able to coerce Plaintiff into unwanted sexual encounters with him during his official business trips.

165.    Defendant Intel participated in Defendant Butler's sexual misconduct by knowingly providing Defendant Butler with the resources and authority to sexually target, recruit and exploit young new female hires, such as the Plaintiff, and by helping to clean up after and cover up complaints sexual misconduct, by, *inter alia*, downplaying the violent incidents of rape and sexual assault as being nothing more than breaches of the non-fraternization policy and, further, retaliatorily terminating the Plaintiff after she had disclosed Defendant Butler's wrongdoing.

166.    Defendant Intel paid for Defendant Butler's interstate travel and lodging

expenses that were incurred during business trips where sexual assaults against the Plaintiff had been committed.   At all relevant times, Defendant Intel perceived Defendant Butler as a top-level earner and contributor to Defendant Intel's financial success.  Defendant Intel benefited from its involvement in the venture because it allowed Defendant Butler to increase the cost-efficiency of its operations.  By facilitating Defendant Butler's commercial sex acts in interstate commerce, Defendant Intel reaped tangible financial benefits from Defendant Butler's work at the expense of Plaintiff's suffering.

167.    Plaintiff felt immense pressure to silently acquiesce to the sexual assaults and abuse she suffered at the hands of Defendant Butler because of the negative repercussions she would suffer if she challenged him.

168.    As a direct and proximate result of Defendant Intel and Defendant Butler's unlawful conduct as alleged hereinabove, the Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, economic harm and other consequential damages.

169.    Plaintiff also seeks reasonable attorneys' fees as provided under 18 U.S. Code § 1595(a).

### NINTH CAUSE OF ACTION
### (Sexual Harassment under Title VII of the Civil Rights Act of 1964)
### (Against Defendant Intel)

170.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully within.

171.    Defendant Intel has subjected the Plaintiff to sexual harassment and a hostile work environment. As a result, Plaintiff was denied the opportunity to work in an employment environment free of unlawful discrimination.

172.    In addition, Defendant Butler engaged in *quid pro quo* harassment.  The conduct of Defendant Butler, as described hereinabove, constitutes quid pro quo sexual harassment, in violation of Title VII.  Plaintiff's *quid pro quo* sexual harassment claim is predicated on, among other conduct, the conditioning of her continued employment on her willingness to participate in sexual acts with Defendant Butler and/or tolerate his sexual advances and hostile work environment.

173.    Defendant Intel perpetuated the hostile work environment by terminating the Plaintiff in response to her report of the sexual harassment she suffered at the hands of Defendant Butler.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

174. The foregoing actions are in direct violation of Title VII of the Civil Rights Act of 1964, as amended.

175. As a direct and proximate result of Defendant Intel's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

176. As a direct and proximate result of Defendant Intel's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

177. Defendant Intel's unlawful discriminatory and wrongful conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damage.

178. Plaintiff also seeks reasonable attorneys' fees as permitted under 42 U.S.C. § 2000e-5 (k) and any other applicable statutes for Plaintiff's prosecution of this action.

## TENTH CAUSE OF ACTION
### (Retaliation under Title VII of the Civil Rights Act of 1964)
### (Against Defendant Intel)

179. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

180. Defendant Intel has retaliated against Plaintiff because she engaged in protected activity as defined by Title VII of the Civil Rights Act by, *inter alia*, terminating her employment and refusing to accommodate her.

181. As a direct and proximate result of Defendant Intel's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

182. As a direct and proximate result of Defendant Intel's unlawful retaliatory

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental

2   anguish and emotional distress for which she is entitled to an award of monetary damages and

    other relief.

3       183.    Defendant Intel's unlawful discriminatory and wrongful conduct constitutes

4   a willful and wanton violation of Title VII, was outrageous, malicious, and cruel, was intended

5   to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights,

6   entitling Plaintiff to an award of punitive damages.

7       184.    Plaintiff also seeks reasonable attorneys' fees as permitted under 42 U.S.C. §

8   2000e-5 (k) and any other applicable statutes for Plaintiff's prosecution of this action.

9                                **PRAYER FOR RELIEF**

10      1.   WHEREFORE, Plaintiff prays judgment as follows:

11      2.   For an award of damages in an amount according to proof with interest thereon;

12      3.   For compensatory and general damages in an amount according to proof;

13      4.   For past and future lost income and benefits;

14      5.   For past and future severe emotional distress, pain and suffering;

15      6.   For an award of punitive damages;

16      7.   For injunctive relief;

17      8.   For declaratory judgment;

18      9.   For an award of reasonable attorneys' fees, costs and interest thereon pursuant to Cal.
             Govt Code §12940 et seq., 18 U.S. Code §1595(a), 42 U.S.C. § 2000e-5 (k) and/or all

19           other applicable laws; and

20      10. For all other and further statutory or equitable relief as this Court deems just and proper

21

22  Dated: October 8, 2020                          THE MYERS LAW GROUP, A.P.C.

23

24                                          By: _____
                                                    David P. Myers
25                                                  Rudy Balderama
                                                    Attorneys for Plaintiff Danielle Dysinger
26

27

28

                                           **32**

1

**JURY DEMAND**

2

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

3

4

5    Dated: October 8, 2020                           THE MYERS LAW GROUP, A.P.C.

6

7                                                 By:

8                                                     David P. Myers
                                                      Rudy Balderama
9                                                     Attorneys for Plaintiff Danielle Dysinger

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number and Address):

THE MYERS LAW GROUP, A.P.C.
9327 FAIRWAY VIEW PLACE, SUITE 100
RANCHO CUCAMONGA, CALIFORNIA 91730

TELEPHONE NO.: (909) 919-2027     FAX NO. (Optional):

E-MAIL ADRESS (Optional):

ATTORNEY FOR (Name): PLAINTIFF

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

STREET ADDRESS: 191 NORTH FIRST STREET

MAILING ADDRESS: 191 NORTH FIRST STREET

CITY AND ZIP CODE: SAN JOSE, CALIFORNIA 95113

BRANCH NAME: DOWNTOWN SUPERIOR COURT

**FOR COURT USE ONLY**

System System

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 12/16/2020 9:41 AM
Reviewed By: System System
Case #20CV371802
Envelope: 5481894**

PLAINTIFF/PETITIONER: DANIELLE DYSINGER

DEFENDANT/RESPONDENT: INTEL CORPORATION

CASE NUMBER:
20CV371802

**PROOF OF SERVICE**

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **Civil Lawsuit Notice**

3. a. Party served *(specify name of party as shown on documents served):*
      **INTEL CORPORATION, a Delaware corporation**
   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      **CT CORPORATION SYSTEM, Registered Agent, by serving ALBERT DAMONTE, authorized agent**
4. Address where the party was served: **818 W. 7th Street, Suite 930**
                                       **Los Angeles, California 90017**
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **Dec. 7, 2020**          (2) at *(time):* **11:22AM**
   b. ☐ **by substituted service.** On *(date):*                    at *(time):*         I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual place mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
          *(date):*              from *(city):*         **or**     ☐   a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use Judicial
Council of California POS-010
[Rev. January 1, 2007]

**PROOF OF SERVICE**

Code Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: **DANIELLE DYSINGER** | CASE NUMBER: | |
| --- | --- | --- |
| DEFENDANT/RESPONDENT: **INTEL CORPORATION** | | **20CV371802** |

    c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

        (1) on *(date)*:                            (2) from *(city)*:

        (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage paid envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt) (Code Civ. Proc., § 415.30.)

        (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

    d. ☐ **by other means** *(specify means of service and authorizing code section):*

        ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
    a. ☐ as an individual defendant.
    b. ☐ as the person sued under the fictitious name of *(specify)*:
    c. ☐ as occupant.
    d. ☑ On behalf of *(specify)*: **INTEL CORPORATION, a Delaware corporation**
        under the following code of Civil Procedure section:

| | |
| --- | --- |
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
    a. Name: **Gerardo Castaneda**
    b. Address: **645 W. 9th Street, Unit 110-134, Los Angeles, California 90015**
    c. Telephone number: **(213) 482-1007**
    d. **The Fee** for service was: **$57.00**
    e. I am:
        (1) ☐ not a registered California process server.
        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☑ registered California process server:
            (i)   ☐ owner     ☐ employee   ☑ independent contractor
            (ii)  Registration No.: **4035**
            (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **December 9, 2020**

**GERARDO CASTANEDA**
**FIRST CLASS ATTORNEY SERVICE**
**645 W. 9TH STREET, UNIT 110-134**
**LOS ANGELES, CALIFORNIA 90015**
**(213) 482-1007**

                                 _____
                                      (SIGNATURE)